## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **PHILLIP BOND**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.  4:18-cv-281 |
| | ) | |
| **ARNOLD AUTO CREDIT LLC d/b/a** | ) | |
| **ARNOLD AUTO CREDIT,** | ) | |
| | ) | |
| Serve: | ) | |
| Michael Patrick Moore or Authorized Agent | ) | |
| 468 Jeffco | ) | |
| Arnold, MO 63010 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SAALE & BAILEY, L.C.,** | ) | |
| | ) | |
| Serve at: | ) | |
| Shawn T. Saale or Authorized Agent | ) | |
| 300 St. Peters Centre Boulevard | ) | |
| St. Louis, Missouri 63376 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SPECIFIED CREDIT ASSOCIATION 1,** | ) | |
| **INC.** | ) | |
| | ) | |
| Serve: | ) | |
| Varady, Alex or Authorized Agent | ) | |
| 2388 Schuetz Drive, Suite A-100 | ) | |
| St. Louis, MO 63146 | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Phillip Bond, by and through his undersigned counsel, and

brings this action under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*)

1

("FDCPA") against Defendants Specified Credit Association 1, Inc. and Saale & Bailey, L.C. and the Missouri Merchandising Practices Act, (§ 407.010 *et seq*.) ("MMPA") and Magnuson Moss Warranty – Federal Trade Improvements Commission Act, 15 U.S.C §2301 *et seq* ("MMWA") against Arnold Auto Credit, LLC, and in support thereof states to the Court the following:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a natural person, citizen of Missouri, and resident of Jefferson County, Missouri.

2.      Defendant Arnold Auto Credit LLC ("Arnold Auto Credit") is a Missouri limited liability company, registerd with the Missouri Secretary of State, charter number LC1093806,

3.      Defendant Arnold Auto Credit regularly conducts business in the State of Missouri as Arnold Auto Credit at 468 Jeffo Blvd., Arnold, Missouri ("dealership").

4.      Defendant Specified Credit Association 1, Inc. is Missouri corporation whose principal place of business is located in St. Louis County, Missouri.

5.      Defendant Specified Credit's principal business purpose is the collection of debts in Missouri and nationwide, and he regularly attempts to collect debts alleged to be due another.

6.      Defendant Saale & Bailey, L.C. is a debt collection law firm located in St. Louis, Missouri.  Specifically, Saale & Bailey works for an array of creditors and takes hundreds of default and consent judgments each year against consumers who owe personal debts to such entities.

7.      This Court has original jurisdiction over Plaintiffs' FDCPA claims under 28 U.S.C. § 1331 because they arise under federal law.

8.   This Court has supplemental jurisdiction over Plaintiff's MMPA and MMWA claims under 28 U.S.C. § 1367(a) because those claims are part of the same case or controversy as his FDCPA claims and share a common nucleus of operative fact with the claims within this Court's original jurisdiction

9.   Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because Defendants' misconduct occurred in or was directed at Plaintiffs in the Eastern District of Missouri.

## FACTS

### *Plaintiff Purchases a Vehicle with Undisclosed Defects from Arnold Auto Credit*

10.   On May 9, 2017, Plaintiff purchased a 2005 Nissan Sentra bearing the Vehicle Identification Number 3N1CB51D35L469277 (hereinafter the "Vehicle") from Defendant Arnold Auto Credit.

11.   The purchase price of the vehicle was $4,000.00, towards which Plaintiff made a $750.00 down payment, and financed the remaining balance.

12.   Defendant Arnold Auto Credit did not display or provide to Plaintiff a Buyer's Guide for the vehicle.

13.   Notwithstanding, in consideration for the purchase of the above vehicle, Plaintiff received a "50/50 warranty" from Defendant under which it agreed to cover 50% of all parts and labor for a period of 30-days or 1000 miles (whichever came first) for any repairs on the internally lubricated parts of the motor and transmission.

14.   The "50/50 warranty" is a "written warranty" as that term is defined by 15 U.S.C. § 2301(6), such that Defendant Arnold Auto Credit could not disclaim any implied warranty, per 15 U.S.C § 2308(a).

15.     A few days after purchasing the Vehicle, Plaintiff noticed that the back window would not roll down.

16.     Plaintiff discovered that is was "super-glued" up to conceal the fact that it would not roll up or down.

17.     Upon information and belief, Arnold Auto Credit was the entity who glued the window shut in order to conceal the defect or at least knew about the window defect prior to selling it to Plaintiff without disclosing it to Plaintiff.

18.     Then, just 8 days after purchasing the Vehicle, within the warranty period, Plaintiff was driving on the highway when it completely stopped, stalled, and lost power even with Plaintiff depressing the gas pedal.

19.     Fortunately, Plaintiff was able to guide the Vehicle to the side of the highway without suffering any injury or additional damage to the Vehicle.

20.     Plaintiff called Defendant Arnold Auto Credit to advise of the issue and obtain a repair under the warranty.

21.     Defendant did not answer the phone or return Plaintiff's call.

22.     Eventually, through no help of Defendant, Plaintiff was able to restart the Vehicle and drive it home.

23.     A few days later, the Vehicle lost power once again while Plaintiff was operating it.

24.     This time, Defendant Arnold Auto Credit answered its phone and agreed to perform a repair under the warranty.

25.   Per Defendant Arnold Auto Credit's instruction, Plaintiff had the Vehicle towed to Gateway Automotive for a repair attempt, which failed to correct the Vehicle's nonconformities.

26.   Defendant also charged Plaintiff $110.00 for the tow bill in transporting the Vehicle to the repair facility.

27.   Defendant had the Vehicle returned to Plaintiff after two to three days of repair attempts.

28.   Shortly thereafter, but within thirty days and 1,000 miles of purchase, Plaintiff was driving the vehicle when it suddenly started making popping sounds akin to a Harley-Davidson motorcycle and violently shuddering.

29.   Upon information and belief, the Vehicle's defects relating to the loud popping noises and shuddering relate to the same nonconformities that were the subject of the first repair attempt within the warranty period.

30.   Plaintiff attempted to drive the Vehicle for a few weeks, but the engine popping and shuddering became worse.

31.   Plaintiff no longer felt safe operating the Vehicle.

32.   Therefore, Plaintiff contacted Defendant Arnold Auto Credit to advise of the issues.

33.   Given that the nonconformities with the Vehicle *after* the expiration of the warranty were the same as those that exhibited themselves and were reported to Defendant *within* the warranty period, Defendant Arnold Auto Credit was obligated to offer to cover the repairs under its 50/50 warranty.

34.   Notwithstanding this fact, Defendant Arnold Auto Credit refused to help.

5

***Plaintiff Surrenders the Vehicle After Defendant Refuses to Repair the Vehicle***

35.   Due to its ongoing conformities and concerns with its safety, Plaintiff voluntarily surrendered the Vehicle to Defendant Arnold Auto Credit shortly before the second payment became due.

36.   Upon information and belief, Defendant Arnold Auto Credit took possession of the Vehicle.

37.   Subsequent to the repossession, Defendant Arnold Auto Credit made no further attempts at communication with Plaintiff.

38.   Before demanding a deficiency balance, Defendant Arnold Auto Credit was legally obligated but failed to send the following notices:

    a.   notice that Defendant Arnold Auto Credit would apply for a repossessed title;

    b.   notice of Defendant Arnold Auto Credit's plan to sell the vehicle; and

    c.   notice of Defendant Arnold Auto Credit's sale of the vehicle and explanation of deficiency.

39.   Subsequent to the repossession, Defendant Arnold Auto Credit resold the subject vehicle for valuable consideration, though the sale price was not commercially reasonable.

***Defendant Specified Credit Attempts to Collect a Non-Existent Debt***

40.   As a result of Defendant Arnold Auto Credit's failure to send Plaintiff any of the requisite notices, it was precluded from collecting any alleged deficiency balance on the Vehicle.

41.   Notwithstanding this fact, Defendant Arnold Credit assigned Plaintiff's alleged deficiency balance to Defendant Specified Credit for collections.

42.   When Defendant Specified Credit was retained, Arnold Auto Credit provided all of the relevant information relating to the account, including whether any notices were sent to allow for the collection of a deficiency balance.

43.   Upon information and belief, Defendant Specified Credit noticed that Arnold Auto Credit did not send any post-repossession notices to Plaintiff but decided to demand payment anyway.

44.   In the alternative, Defendant Specified Credit did not obtain the relevant information relating to the account, and, therefore, does not have any policies or procedures in place to avoid demanding payment on a deficiency balance where the requisite notices have not been sent to a consumer.

45.   Based on Defendant Specified Credit's previous dealings with Defendant Arnold Auto Credit, Defendant Specified Credit knew that Defendant Arnold Auto Credit had no policies and procedures in place to send the required notices.

46.   Even though Specified Credit knew that no repossession notices were sent, it mailed an initial collection letter to Plaintiff dated August 2, 2017.

47.   Therein, Specified Credit demanded payment of $3,110.00 on an alleged deficiency balance where the original creditor did not strictly comply with the statutory notice requirements, in violation of in violation of 15 U.S.C. § 1692e(2)(A), § 1692g(a)(1), and § 1692f(1).

***Defendant Specified Credit Misleads Plaintiff as to the Creditor(s) of His Account***

48.   Within the body of its August 2017 collection letter, Specified Credit represented to Plaintiff that it was employed by the "above creditor" to obtain payment on the alleged.

49.     Confusingly, however, Specified Credit identified the purported "above creditor" as follows:

Our Client: MAJOR MOTOR CO, ARNOLD AUTO CREDIT, BROADWAY AUTO

50.     The three named clients that Defendant Specified Credit identified in its letter are, in fact, three separate legal entities.

51.     According to the Missouri Secretary of State, Major Motor Company is a limited liability company bearing Charter Number LC1141731 and located at 699 Lincoln Drive, Imperial, Missouri 63052.  Arnold Auto Credit is a limited liability company bearing Charter Number LC1093806 and located at 468 Jeffco, Arnold, Missouri 63010.  Broadway Auto Mart is a domestic corporation bearing Chater Number 0047 and located at 7902 South Broadway, St. Louis, Missouri 63111.

52.     Upon information and belief, judging by each of their secretary of state filings, the only connection among these three, distinct legal entities is that they share a common member/owner: Michael P. Moore.

53.     Due to the fact that Specified Credit identified three different creditors, Plaintiff did not know whether he owed one creditor, all three, or a combination thereof.  In so doing, Specified Credit misled Plaintiff as to his current creditor and created a risk of harm that Plaintiff would pay the wrong creditor, in violation of 15 U.S.C. § 1692e(5).

54.     Specified Credit also failed to clearly apprise Plaintiff of the identity of his current creditor, in violation of 15 U.S.C. § 1692g(a)(2).  *See Pardo v. Allied Interstate, LLC*, No. 1:14-CV-01104-SEB, 2015 WL 5607646, at *2 (S.D. Ind. Sept. 21, 2015) (finding the plaintiff stated a claim under section 1692g where "the letter's heading stated that 'LVNV Funding, LLC' was the 'Current Creditor,' but the letter's body referred to 'Resurgent Capital

8

Services LP' as Allied's 'Client' and offered no explanation of the relationship between LVNV and Resurgent Capital or why/how Resurgent Capital was involved with the debt at all.").

### *Defendant Specified Credit Fails to Honor Plaintiff's Verification Rights*

55.     In addition to demanding payment on a non-existent debt, Specified Credit also refused to honor Plaintiff's dispute and verification rights.

56.     Within August 12, 2017 letter, Specified Credit provided Plaintiff the following disclosure:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you.

57.     As a result of its attempt to collect a non-existent debt, Plaintiff sent Defendant Specified Credit a written dispute on August 17, 2017.

58.     Specified Credit received a copy of Plaintiff's written dispute within thirty days of sending the August 12, 2017 collection letter.

59.     Pursuant to 15 U.S.C. § 1692g(b), upon receiving Plaintiff's written dispute, Specified Credit was obligated to either (1) cease collecting the debt or (2) mail Plaintiff sufficient verification of the debt in light of the nature of his dispute.

60.     Specified Credit was prohibited by law from resuming their collection activity without first verifying Plaintiff's alleged debt.

61.     If Specified Credit was unable to verify the debt, they were obligated to cease collecting on the debt altogether.  *See Wilhelm v. Credico, Inc.*, 519 F.3d 416, 419 (8th Cir. 2008) ("Because not all debts can be verified . . . debt collectors are not *required* to validate a

9

debt at the consumer's request; they may alternatively 'cease all collection activities.'").

62.    Plaintiff disputed that he owed the entirety of the alleged debt.

63.    Notwithstanding the nature of Plaintiff's dispute, Specified Credit never attempted to verify with the original creditor, Arnold Auto Credit, that any post-repossession notices were sent to Plaintiff or that Plaintiff in fact owed that amount *after* receiving a copy of Plaintiff's written dispute.

64.    Instead, prior to sending Plaintiff verification of the debt, Specified Credit hired the law firm of Saale & Bailey, L.C. to file a lawsuit against Plaintiff to obtain payment on the non-existent debt.

### Defendant Saale & Bailey Files Suit on a Non-Existent Debt

65.    When Defendant Saale & Bailey was retained, Specified Credit provided all of the relevant information relating to the account, including whether any notices were sent to allow for the collection of a deficiency balance.

66.    Upon information and belief, Defendant Saale & Bailey noticed that the original creditor, Arnold Auto Credit, did not send any post-repossession notices to Plaintiff but decided to demand payment anyway.

67.    In the alternative, Defendant Saale & Bailey did not obtain the relevant information relating to the account before filing a lawsuit, and, therefore, does not any policies or procedures in place to avoid demanding payment on a deficiency balance where the requisite notices have not been sent to a consumer.

68.    Even though Saale & Bailey knew that no repossession notices were sent, or was uncertain as to whether any such notices were sent, it filed a lawsuit in the name of Arnold Auto Credit against Plaintiff on September 29, 2017.

69.     Within its Petition, Saale & Bailey demanded payment of $3,110.00 on a non-existent debt given that the original creditor did not strictly comply with the statutory notice requirements, in violation of in violation of 15 U.S.C. § 1692e(2)(A), § 1692g(a)(1), and § 1692f(1).

### Defendant Saale & Bailey Takes Action Not Legally Entitled to be Taken

70.     Even assuming Plaintiff's original creditor, Arnold Auto Credit, had sent the requisite post-repossession and pre-sale notices, that would have only entitled it to a deficiency balance after deducting the amount it obtained from the sale of the collateral.

71.     Defendant Saale & Bailey, however, filed suit against Plaintiff under a common law breach of "negotiable instrument" action.

72.     Once a consumer's vehicle is repossessed, a creditor can only proceed to seek a deficiency, not a breach of contract.

73.     Defendant Saale & Bailey not only prevented the alleged remaining balance due from being deducted, but failed to plead the necessary elements of a deficiency, as would have occurred with a deficiency action.

74.     Therefore, by filing suit under an alleged breach of contract after the collateral was already repossessed, Defendant Saale & Bailey took action it was not legally entitled to take and misrepresented the legal status of Plaintiff's (otherwise non-existent) debt, in violation of 15 U.S.C. § 1692e(3) and § 1692e(2)(A).

### Defendant Saale & Bailey's Inclusion of Plaintiff's 15 U.S.C. § 1692g Rights Within the Body of the Petition Violated the FDCPA

75.     Within the body of its legal pleading, Defendant Saale & Bailey provided Plaintiff a notice stating he had thirty-days from receiving the Petition to dispute the debt or request

verification of the debt in writing.

76.     In Missouri associate circuit court cases, however, the deadline to respond or appear in defense of the case can be as soon as 10 days from the date of service.  Mo. Rev. Stat. § 517.041.

77.     Plaintiff was served with the collection suit on October 22, 2017.

78.     In the collection suit, Plaintiff was ordered to appear in court on November 1, 2017, which was well-within his dispute period.

79.     Including 1692g disclosures within a legal petition is misleading to unsophisticated consumers who may not understand that their dispute of the validity of the debt by contacting the debt collector will not, in fact, relieve them of the independent deadline to respond to the complaint, in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692g.

### *Defendants Continue to Collect the Alleged Debt After Plaintiff Invokes His Written Verification Rights under 15 U.S.C. § 1692g*

80.     As instructed with Defendant's collection Petition, Plaintiff sent Defendant Saale & Bailey a written dispute of the debt in advance of the November 1, 2017 trial setting.

81.     Plaintiff sent the written dispute to the electronic mail address Saale & Bailey included in the signatory line of its Petition.

82.     Plaintiff's written dispute read as follows: "To whom it may concern: I am writing to dispute my alleged debt with Arnold Auto Credit.  Since I do not owe the debt or any interest on the account, I ask that you dismiss my case immediately.  Sincerely, Phillip Bond."

83.     Defendant Saale & Bailey did not send Plaintiff verification of the debt after receiving his written dispute.

84.     Notwithstanding, Defendant Saale & Bailey did not cease collecting the debt.

***Plaintiff Incurs Actual Damages by Having to Retain an Attorney***

85.     Since Defendant did not dismiss the collection action or continue the matter to the next court date upon receiving Plaintiffs' written dispute, Plaintiff was forced to hire an attorney to represent him at the November 1, 2017 court date.

86.     Plaintiff feared that Defendant would continue to collect the debt and move for a default judgment despite receiving Plaintiff's written dispute.

87.     Unfortunately, Plaintiff's fears were confirmed; at the November 1, 2017 trial setting, Defendant represented to the Honorable Jeffrey T. Coleman that Plaintiff was in default and requested the entry of a default judgment.

88.     In response, Plaintiff's attorney informed the Court that the Plaintiffs had retained counsel and that he did not owe the alleged debt.

89.     Once again, rather than dismissing the action, Defendant continued to attempt to obtain payment on the debt.

90.     Defendant scheduled the case for a trial to begin on December 6, 2017.

91.     Plaintiff's attorney filed an Answer and immediately began preparing for the trial that Defendant scheduled.

92.     In addition, Plaintiff's attorney served written discovery upon Defendant asking it to produce the original creditor's records confirming that the requisite post-repossession and pre-sale notices were sent to Plaintiff.

93.     Given that those documents never existed, Defendant Saale & Bailey dismissed its own lawsuit rather than answering any of Plaintiff's discovery requests.

94.     Absent Defendant's collection suit and failure to cease collecting the debt upon receiving Plaintiff's written dispute, Plaintiff would not have incurred the out-of-pocket cost of

obtaining a defense attorney.

95.     Had Plaintiff not hired an attorney and/or appeared in defense of the collection suit in 17SL-AC22650, Defendant would have requested (and did request) a default judgment on the non-existent debt.

96.     Defendants Specified Credit and Saale & Bailey's collection attempts have caused Plaintiff to incur actual damages including but not limited to the amount of their attorney's fees, as well as damages for anxiety, frustration, and worry for being subject to a collection suit.

97.     Defendants Specified Credit and Saale & Bailey's collection attempts have also caused Plaintiff to suffer statutory damages under 15 U.S.C. § 1692k in the amount of $1,000.00.

98.     Defendant Arnold Auto Credit's conduct has caused Plaintiff to suffer actual loss including but not limited to the purchase price of the vehicle, towing and repair costs, and consequential damages.

## COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT as to DEFENDANT SPECIFIED CREDIT ASSOCIATION 1 and SAALE & BAILEY, L.C.

99.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs.

100.    Defendants Specified Credit Association 1, Inc. engages in business the principal purpose of which is the collection of debts, and it regularly attempts to collect debts alleged to be due another.   Defendant Specified Credit collects debts from consumers using the mail, telephone, and legal process.

101.    Defendant Specified Credit retains legal counsel in order to file collection suits on behalf of its creditor client.

102.    Defendant Saale & Bailey is one such law firm that Specified Credit retains. Saale & Bailey also engages in business the principal purpose of which is the collection of debts,

and it regularly attempts to collect debts alleged to be due another.

103.    Defendant Saale & Bailey files hundreds of lawsuits in Missouri state courts each year attempting to collect consumer debts.

104.    Defendants Specified Credit and Saale & Bailey are "debt collectors" as defined in 15 U.S.C. § 1692a(6).

105.    Defendants' collection activity of which Plaintiff complains occurred within the previous twelve (12) months.

106.    In their attempts to collect the alleged debt from Plaintiff, Defendants have committed multiple violations under the FDCPA, including, but not limited to:

a.      Falsely representing the amount and character of Plaintiff's alleged debt, in violation of 15 U.S.C. § 1692e(2)(A); and

b.      Utilizing unfair collection practices, including the collection of an amount that is not permitted by law, in violation of 15 U.S.C. § 1692f(1);

c.      Failing to clearly identify the name of Plaintiff's current creditor within the August 12, 2017 collection letter, in violation of 15 U.S.C. § 1692g(a).

d.      Resuming collection efforts after receiving Plaintiff's written dispute without first providing Plaintiff verification of the alleged debt in light of his dispute, in violation of 15 U.S.C. § 1692g(b);

e.      Overshadowing a consumer's right to dispute and request verification of the debt, in violation of 15 U.S.C. § 1692g(b);

f.      Threatening action Defendant was not legally authorized to take and/or did not intend to take, in violation of 15 U.S.C. § 1692e(5); and

107.    Defendant's collection attempts also have caused Plaintiffs to incur actual

damages including but not limited to the attorney's fees they incurred in having an attorney enter in the underlying collection suit, and anxiety, frustration, and worry.

108.    In addition to these actual damages, Plaintiffs suffered additional concrete injuries when Defendant's above-described conduct misled them regarding his dispute and verification rights and when Defendant caused a risk of harm that Plaintiff would overpay for an amount they did not legally owe.

WHEREFORE, Plaintiff respectfully request that judgment be entered against Defendants for:

A.    Judgment that Defendants' conduct violated the FDCPA;

B.    Actual damages;

C.    Statutory damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k); and

D.    For such other relief as the Court may deem just and proper.

## COUNT II
## MISSOURI MERCHANDISING PRACTICES ACT as to DEFENDANT ARNOLD AUTO CREDIT

**COMES NOW** Plaintiff, by and through the undersigned counsel, and for his cause of action in Count II against Defendant Arnold Auto Credit respectfully states to the Court as follows:

109.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs.

110.    Plaintiff is a "Person," as defined by § 407.010(5) R.S.Mo.

111.    Defendant is a "Person" as defined by § 407.010(5) R.S.Mo.

112.    Plaintiff's purchase and/or servicing of the vehicle is a "Sale" or is in connection with a "Sale" as defined by § 407.010(6) and § 407.020 R.S.Mo.

16

113.    Plaintiff purchased the vehicle primarily for personal, family, or household purposes.

114.    In connection with said transaction, Defendant committed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, in violation of § 407.020 R.S.Mo.

115.    Defendant's collection activities, as described herein, are also in connection with the sale of the vehicle and thereby constitute violations of § 407.020 R.S.Mo.

116.    Defendant Arnold Auto Credit failed to properly prepare and display the Buyers Guide, in violation of 16 C.F.R. section 455.2.

117.    Defendant Arnold Auto Credit breached the following state and federal regulations:

a.  Defendant Arnold Auto Credit misrepresented the mechanical condition of a used vehicle, in violation of 16 C.F.R.  section 455.1(a);

b.  Defendant Arnold Auto Credit omitted a material fact necessary to make statements made not misleading, in violation of 15 C.S.R. 60-9.090;

c.  Defendant Arnold Auto Credit made assertions knowing or believing they was not in accord with the facts, in violation of 15 C.S.R. 60-9.100

118.    Defendant Arnold Auto Credit fraudulently induced Plaintiff to sign a void "Right of Repossession" document that misrepresents the law regarding repossessions in Missouri.

119.    Not only can Plaintiff not be compelled to waive any notices provided for by the Missouri statutes on repossession, but the "Right of Repossession" omits material facts regarding the repossession process.

120.    The information in the "Right of Repossession" document also conflicts with the remedies provided by the Retail Installment Contract executed by Plaintiff and Defendant Arnold Auto Credit

121.    Defendant sought a deficiency judgment without strict compliance with the statutory requirements.

122.    Subsequent to repossession of the vehicle, Defendant Arnold Auto Credit failed to send a "Notice of Our Plan to Sell Property," in violation of Section 400.9-614 R.S.Mo and section 408.557 R.S.Mo.

123.    Subsequent to repossession of the vehicle, Defendant Arnold Auto Credit also failed to send a "Notice of Sale of Collateral and Explanation of Deficiency," in violation of Section 400.9-616(a)(1)(B) and (c) R.S.Mo, section 400.9-610(b)m and section 408.556(3) R.S.Mo.

124.    Defendant Arnold Auto Credit also failed to comply with section 400.9-610 R.S.Mo. in that the resale of the vehicle after repossession was not commercially reasonable.

125.    As a direct and proximate result of Defendant's violations of § 407.020 R.S.Mo., Plaintiff has suffered an ascertainable loss of money and/or property.

126.    Pursuant to § 407.025 R.S.Mo., Plaintiff seeks attorney's fees.

**WHEREFORE**, Plaintiff respectfully demands damages that will fairly and justly compensate Plaintiff, together with his costs and attorney's fees herein incurred and expended and for such further and additional relief as this Court may deem just and proper under the circumstances.

**COUNT III**
**MAGNUSON MOSS WARRANTY-FEDERAL TRADE IMPROVEMENTS**
**COMMISSION ACT as to Defendant Arnold Auto Credit**

**COMES NOW** Plaintiff, by and through the undersigned counsel, and for his cause of action in Count III against Defendant Arnold Auto Credit respectfully states to the Court as follows:

127.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs

128.    Plaintiff is a "Consumer" as defined by 15 U.S. C. § 2301(3).

129.    Plaintiff is a "Buyer" per section 400.2-103 R.S.Mo.

130.    Defendant Arnold Auto Credit is a "Supplier" and a "Warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

131.    Defendant Arnold Auto Credit is a "Seller" per section 400.2-103 R.S.Mo.

132.    The vehicle is a "Consumer Product" as defined by 15 U.S.C. § 2301(1).

133.    Defendant Arnold Auto Credit created an "Implied Warranty" for the vehicle, as that term is defined by 15 U.S.C. § 2301(7).

134.    Section 15 U.S.C. § 2310(d)(1) provides:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty or service contract, may bring suit for damages and other legal and equitable relief…

135.    One of the obligations under the MMWA is that a "warrantor must…remedy such consumer product within a reasonable time and without charge, in the case of a defect," per 15 U.S.C. § 2304(a)(1).

136.    Defendant Arnold Auto Credit was afforded a reasonable opportunity to cure the vehicle's nonconformities pursuant to 15 U.S.C. § 2310(e).

137.    Defendant Arnold Auto Credit was unable and/or unwilling to remedy the vehicle within a reasonable time and without charge, in violation of 15 U.S.C. § 2304(a)(1).

138.    The defects and nonconformities the vehicle exhibited, as described herein, constitute a breach of the Implied Warranty of Merchantability, per section 400.2-314 R.S.Mo.

139.    Plaintiff notified Defendant Arnold Auto Credit regarding a breach of warranty within a reasonable time after Plaintiff discovered defects with the vehicle.

140.    As a direct and proximate result of Defendant Arnold Auto Credit's failure to comply with implied warranties, Plaintiff has suffered damages.

141.    As a result of the refusal to repair the vehicle under the implied warranties, the value of the vehicle at the time of purchase was zero.

142.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff seeks all Costs, including attorney's fees and expert witness fees.

**WHEREFORE**, Plaintiff respectfully demands damages consisting of:

A.  The full purchase price of the vehicle, collateral charges, finance charges, incidental and consequential damages;

B.  Costs, including expert witness fees and reasonable attorney's fees; and

C.  For such other relief as this court deems just and proper.

Respectfully submitted,

**BRODY & CORNWELL**

/s/ Alexander J. Cornwell
Alexander J. Cornwell, #64793MO
7730 Carondelet Avenue, Suite 135
Saint Louis, MO  63105
Phone: 314.932.1068
Fax: 314.228.0338
acornwell@brodyandcornwell.com
*Attorneys for Plaintiff*